**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Diago Francisco Glover, ) | No. CV-12-689-TUC-CKJ (BGM) |
| ) | |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Susan G. McClintock, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| ) | |

Currently pending before the Court is Petitioner Don Diago Francisco Glover's *pro se* Petition Under 28 U.S.C. § 2241 For a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent McClintock has filed her Answer and Response in Opposition to Petition for Writ of Habeas Corpus ("Response") (Doc. 8). Petitioner filed a Traverse (Doc. 13) and a Motion for Judgment on the Pleadings, Summary Judgment and Judicial Notice (Doc. 14). Respondent has filed a Response in Opposition to Motion for Judgment on the Pleadings, Summary Judgment and Judicial Notice (Doc. 16). Petitioner has filed a Motion for Extension of Time to File Reply (Doc. 17) and a Reply in Support of his Motion for Summary Judgment (Doc. 18). Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1). The Magistrate Judge further recommends that the District Court deny as moot the Petitioner's Motion for Judgment on the Pleadings, Summary Judgment and Judicial Notice (Doc. 14) and the Motion for Extension of Time to File Reply (Doc. 17), as

this Reply (Doc. 18) has already been filed and considered by the Court.

## I. PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution ("FCI-Safford") in Safford, Arizona. *See* Response (Doc. 8), Decl. of Matthew J. Carney (Exh. 1) at ¶ 2. From December 2, 2009 through March 7, 2012, he was incarcerated at the Federal Medical Center ("FMC-Rochester") in Rochester, Minnesota. *Id*. at ¶ 2, Attach. 1. He is serving a 151 month sentence from the Eastern District of Michigan for Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 846. *Id*. at ¶ 2, Attach. 2. Petitioner is projected to complete this sentence on October 6, 2016, via Good Conduct Time ("GCT") provided Petitioner earns all available GCT. *Id*. at Attach. 2. Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on September 20, 2012. *See* Petition (Doc. 1) at 1.

Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits. Petitioner alleges that (1) Bureau of Prisons ("BOP") staff performed the Breathalyzer test improperly, (2) he was not allowed to present witnesses and evidence, and (3) he was not properly informed of program statements and amendments to BOP policies on Inmate Discipline. *Id*. at 2. Petitioner requests that 41 days of good time credits be restored. *Id*. at 9.

## II. FACTUAL BACKGROUND

On December 9, 2011, Senior Officer Heather Ptacek administered three Breathalyzer tests on Petitioner with an Alco-Sensor 3 Breathalyzer. *See* Response (Doc. 8), Exh. 1, Attach. 3 at 11. Petitioner registered a .080 reading on his first test at 9:33 p.m., a .082 reading on his second test at 9:35 p.m., and a .103 reading on his third test at 9:48 p.m. *Id*. Officer Ptacek wrote an incident report detailing the results of the Breathalyzer tests and charging Petitioner with a violation of Code 112, Use of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the

Medical Staff. *Id.* at 7. The following day, on December 10, 2011, Lieutenant R. Stennes delivered a copy of the incident report to Petitioner and advised him of his rights. *Id.* at 8. That day, Petitioner stated he understood his rights, chose not to comment, and called no witnesses. *Id.* On December 14, 2011, Petitioner again signed a form acknowledging that he had been advised of his rights and indicated that he did not wish to have a staff representative or witnesses at his Discipline Hearing Officer ("DHO") proceeding. *See* Response (Doc. 8), Exh. 1, Attach. 3 at 9-10.

At the hearing before DHO Auterson on January 10, 2012, Petitioner once again stated he did not request a staff representative or witnesses and denied the charges brought against him. *Id.* at 1. Petitioner claimed that the Breathalyzer machine malfunctioned, an issue Lieutenant Underwood was aware of, and that procedures were not followed properly with regards to the time intervals between tests. *Id.* at 2. Lieutenant Underwood came to the hearing to clarify that the malfunctions which Petitioner was referring to occurred months ago and that he was not present on the day Petitioner was breathalyzed. *Id.* After examining the evidence, DHO Auterson found Petitioner guilty and imposed sanctions of 41 days Disallowance of Good Time, 30 days of Disciplinary Segregation, and 60 days loss of Commissary, Telephone, and Visiting privileges. *Id.* On May 16, 2012, DHO Auterson signed the DHO report and two days later a copy of the report was provided to Petitioner. *Id.* at 6.

On June 12, 2012, Petitioner filed his administrative remedy appeal with the Western Regional Office. *See* Traverse (Doc. 13), Exh. K1 (Administrative Remedy Receipt). A response was due to him by July 12, 2012. *Id.* Having failed to receive a response in the allotted time period, Petitioner proceeded to appeal to the Central Office on July 28, 2012. *Id.* at Exh. K3 (Central Office Appeal Form). Two days later, on July 30, 2012, Petitioner received the Regional Office's denial of his request for relief. *Id.* at Exh. K4 (Regional Director Response). The appeal at the Central Office level was considered filed on August 7, 2012. *Id.* at Exh. K3 (Central Office Appeal Form). On September 20, 2012, Petitioner proceeded to file a Petition for Writ of Habeas Corpus because he had again failed to receive

- 3 -

a response in the allotted time period. *See* Petition (Doc. 1) at 1. The Central Office did not respond to the appeal until September 26, 2012, and the Petitioner did not receive the response until October 19, 2012. *See* Traverse (Doc. 13), Exh. K5 at 2 (Unit Manager Memorandum). The Central Office rejected the Petitioner's appeal because the Regional appeal response was not attached and gave him 15 days from September 26, 2012 to re-file the appeal. *Id*. at 1 (Central Office Rejection Notice). However, because Petitioner received the rejection notice more than 15 days from September 26, 2012, he was unable to timely appeal. *Id.* at 2 (Unit Manager Memorandum).

## III.   ANALYSIS

### A.   Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (*quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id*. at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id*.

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence, rather he seeks relief with respect to disciplinary proceedings that resulted *inter alia* in the loss of good time credit while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) ("a prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241 for 'expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility of parole.'") (*quoting Bostic*

- 4 -

*v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989)); *Tucker v. Carlson,* 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241."); *Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at FCI-Safford in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55, 115 S.Ct. 2021, 2023-24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (*quoting Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct is own mistakes

and to preclude the need for judicial review.'" *Id.* (*quoting Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, 894 F.2d at 354; *Martinez*, 804 F.2d at 571). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray*, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to *pro se* litigants).

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(3). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14. An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 days. *Id.* "If the

inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

Here, Respondent avers that Petitioner has failed to exhaust his administrative remedies. Respondent submits evidence that Petitioner filed an incomplete appeal at the Central Office level. *See* Response (Doc. 8), Exh. 1 at ¶ 4, Attach. 4 at 8. The Central Office appeal was incomplete because it did not include the Regional Office response. *Id.* Respondent asserts that Petitioner was notified of the defect but did not take action to cure it and re-file. *Id.* Respondent claims that because the Petitioner "has not allowed the administrative remedy program an opportunity to fully address this issue, and he was provided an opportunity to correct his Central Office Administrative Remedy Appeal, this petition should be denied." *See* Response (Doc. 8) at 6. Respondent fails, however, to mention the administrative delays which Petitioner faced in receiving the responses. Nor does Respondent discuss the effect of Petitioner's time period to cure and re-file expiring before he even received a response from the Central Office. Regardless, Respondent seeks dismissal of the Petition for failure to exhaust administrative remedies. *Id.*

Petitioner contends that he did in fact exhaust the administrative remedies available to him because he followed the appeal procedure and any delays or incorrect filings are attributable to the prison administration. *See* Traverse (Doc. 13) at 2. His BP-10 appeal was filed on June 12, 2012 and, per 28 C.F.R. § 542.18, a response from the Regional Director was due to Petitioner within 30 days, by July 12, 2012. *Id.*, Exh. K1 (Administrative Remedy Receipt). Although the response by the Regional Director was dated July 10, 2012, Petitioner did not "receive a response" as directed by regulation within the allotted time period because he only received the response on July 30, 2012. *Id.*, Exh. K4 (Regional Director Response). As permitted by 28 C.F.R. § 542.18, Petitioner considered "the absence of a response to be a denial at that level" and he noted the same when he filed his BP-11 appeal to the General Counsel on July 28, 2012. *Id.*, Exh. K3 (Central Office Appeal Form). The General Counsel received the appeal on August 7, 2012 and had 40 days, until September 17, 2012, to respond. *Id.* There were no requests for extensions and the response

- 7 -

by General Counsel was dated September 26, 2012, outside of the allotted time period for response. *See* Traverse (Doc. 13), Exh. K5 at 1 (Central Office Rejection Notice). The appeal was rejected because Petitioner had not attached a copy of the BP-10 appeal and response; however, these documents were unavailable when Petitioner filed his BP-11. *Id.* In the rejection response, General Counsel gave Petitioner 15 days from September 26, 2012 to resubmit his appeal with the proper documents attached. *Id.* Petitioner did not receive the response from General Counsel until October 19, 2012, well outside the 40 days time allotted for response and over 15 days from the date of rejection, rendering it impossible for him to timely file a corrected BP-11. *Id.* at 2 (Unit Manger Memorandum). Petitioner was given a memorandum from a Unit Manager at FCI-Safford stating that the reason Petitioner could not timely and properly appeal was not his fault, but rather was because of the delay in receiving responses. *Id.* Petitioner did not receive his response from General Counsel within the allotted time period, so once again, per regulation, he considered "the absence of a response to be a denial at that level" when he filed his Petition for Writ of Habeas Corpus on September 20, 2012. *See* Petition (Doc. 1) at 1-2.

The Court concludes that Petitioner has exhausted his administrative remedies. Petitioner offers evidence that he has attempted to timely and correctly file at every level but his attempts have been frustrated by administrative delay. The prison failed to timely respond to both Petitioner's Regional and Central Office appeals. "If General Counsel fails to respond within 40 days, the inmate can assume that the appeal was denied and proceed with a lawsuit." *Martin v. Fed. Bureau of Prisons*, 2011 WL 6057508, *2 (C.D. Cal. 2011). Furthermore, interference by government officials would constitute an excuse for procedural default. *Nigro*, 40 F.3d at 996 (citing *Francis*, 894 F.2d at 355). A "prison's failure to act promptly cannot bind a pro se prisoner." *Id.* (quoting *Houston v. Lack*, 487 U.S. 266, 276, 1008 S. Ct. 2379, 2385 (1998)). The Eastern District of California considered the effects of a prison's failure to timely respond and stated that:

> [A] complaint should not be dismissed for failure to exhaust administrative remedies where prison officials do not respond to an appeal in the time allowed for responding under grievance procedures. Prison officials have

- 8 -

> apparently not followed their own regulations regarding the time for processing administrative appeals in this case. Under these circumstances, the delay in the processing of plaintiff's appeal excuses further exhaustion.

*Mayer v. Redix*, 2012 WL 360202, *6 (E.D. Cal. 2012) (internal citations omitted). The obligation to exhaust "available" remedies persists as long as some remedy remains "available" and a prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review. *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005). *Brown* discusses the effect of prison delay, noting that "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Id*. at 943 n. 18. As discussed by the Central District of California, unavailable remedies can excuse exhaustion because:

> The PLRA "does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010). An administrative remedy becomes unavailable for purposes of exhaustion if prison officials do not respond to properly filed grievances or if they otherwise use affirmative misconduct to thwart an inmate's attempts to exhaust. *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Brown v. Valoff*, 42 F.3d at 943 n. 18 (9th Cir. 2005).

*Ekene v. Cash*, 2013 WL 2468387, *4 (C.D. Cal. 2013). Petitioner has offered evidence to support his contention that he exhausted his administrative remedies. He has timely filed all of his appeals and but for the delay of the prison administration, he could have filed the Central Office appeal correctly or cured his defects. Respondent does not proffer an explanation for the delays, nor do they address Petitioner's arguments that the delays forced him to file early and gave him an impossible time window to cure his defects. Petitioner allowed the administrative remedy program an opportunity to address the issue, but once the administration failed to respond timely, Petitioner took the next steps in the appeal process as allowed by regulation. The prison's failure to timely respond should not deny the Petitioner his right to appeal and his procedural defects should be excused. Accordingly, Petitioner has exhausted administrative remedies and the Court shall consider the merits of the Petition.

### C. Due Process

Petitioner asserts that his due process rights were violated because (1) the BOP staff

- 9 -

performed the Breathalyzer test improperly, (2) he was not allowed to present witnesses and evidence, and (3) he was not properly informed of program statements and amendments to BOP policies on Inmate Discipline. *See* Petition (Doc. 1) at 2.

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. As such, they have a due process interest in the disciplinary process that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-67, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied* 487 U.S. 1207 (1988) (*citing Wolff*, 418 U.S. at 563-66, 94 S.Ct. at 2978-79). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703 (9th Cir. 1987) (*citing Hill*, 472 U.S. at 454-56) (*emphasis* added in *Cato*).

### 1. Breathalyzer Test

Petitioner asserts that the BOP staff improperly administered his Breathalyzer test.

- 10 -

He claims the Officer Ptacek did not comport with the Testing Procedures found in Program Statement 6590.07 section 8. *See* Traverse (Doc. 13) at 1 (*citing* Exh. H3 (Program Statement 6590.07)). The procedures require that an inmate who tests positive with a reading of .02 or higher be administered a confirmation test 15 minutes after the initial test. *Id*. The Breathalyzer Log indicates the following results for Petitioner on December 9, 2011: a reading of .080 at 11:33 p.m., .082 at 11:35 p.m., and .103 at 11:48 p.m. *See* Response (Doc. 8), Exh. 1, Attach. 3 at 11. Although Petitioner was given an extra test in between the initial test at 11:33 p.m. and the confirmation test at 11:48 p.m., the testing procedures were still properly followed. The procedures do not prohibit additional tests on the inmate or other inmates in between the 15 minute period, they simply require a second confirmation test 15 minutes after a positive test. Here, Petitioner tested positive at 11:33 p.m. with a reading of .080 and 15 minutes later, at 11:48 p.m., the second confirmation test was again positive with a reading of .103. At the DHO hearing, Petitioner also argued that the Breathalyzer device malfunctioned and that Lieutenant Underwood was aware of the malfunction. *Id*. at 2. Lieutenant Underwood clarified during the DHO hearing that the malfunction Petitioner was referring to occurred several months prior to the date of the incident in question and that he was not present for the Petitioner's Breathalyzer test. *Id*. There is no evidence to suggest the Breathalyzer device malfunctioned when Petitioner tested positive. Therefore, this Court finds that the record demonstrates that Petitioner was not denied due process because the Breathalyzer test followed procedures and the device was not malfunctioning.

### 2. DHO Hearing

Petitioner further alleges that he was denied due process because he was denied the right to call witnesses or present evidence at the DHO hearing. Respondent has demonstrated that on December 10, 2011, the day after the incident, Petitioner received a copy of the incident report, was advised of his rights and stated he understood them, and chose not to comment or call witnesses. *See* Response (Doc. 8), Exh. 1, Attach. 3 at 8. On December 14, 2011, Petitioner was advised of his rights at the DHO hearing and indicated that he did not desire to have a staff representative or witnesses at his hearing. *Id*. at 10. On December 30,

1 2011, in an Inmate Request to Staff form, Petitioner stated he wished to reserve his right to call witnesses and the staff disposition read "noted." *See* Traverse (Doc. 13), Exh. F (Inmate Request to Staff Form). At the DHO hearing on January 10, 2012, Lieutenant Underwood was contacted to clarify about the Breathalyzer malfunction. *See* Response (Doc. 8), Exh. 1, Attach. 3 at 2. The DHO report further states that Petitioner requested no witnesses. *Id.* At a disciplinary hearing, an inmate waives his right to call a witness "by failing either to reiterate his request for [the witness's] testimony when given the opportunity or to object to the close of the hearing." *Barboza v. Kelsey*, 2008 WL 2512785, *10 (C.D. Cal. 2008) (quoting *Bedoya v. Coughlin*, 91 F.3d 349, 352 (2nd Cir. 1996)). The DHO report does not mention any requests or objections by the Petitioner regarding witnesses during the hearing. Petitioner received copies of the DHO findings after the hearing. *See* Response (Doc. 8), Exh. 1, Attach. 3 at 6. This Court finds that the record demonstrates that Petitioner was not denied due processes because he initially waived his right to witnesses and thereafter did not object to this waiver at the hearing.

### 3. Program Statements and BOP Policies

Finally, Petitioner asserts that he was not properly informed of program statements and amendments to BOP policies on Inmate Discipline. Petitioner claims there was no memorandum informing the inmate population of new program statements and amendments. *See* Petition (Doc. 1) at 6. Petitioner sent several staff requests trying to obtain a copy of the new program statement or ascertain who was responsible for informing the inmate population. *See* Traverse (Doc. 13) at 2 (*citing* Exhs. D1-3 (Inmate Request to Staff Forms)). A staff member responded, informing Petitioner that the procedure for informing the inmate population of new program statements or amendments is through the electronic law library. *Id.* at Exh. D2 (Inmate Request to Staff Form). Respondent provides evidence, via a declaration from the Unit Manager, that a notice was placed on inmate bulletin boards regarding the new policies and the program statement was available in the electronic law library. *See* Response (Doc. 8), Exh. 2 at ¶ 3 and Attach. 1. Petitioner offers no evidence to rebut the Respondent's showing that a bulletin notice was posted and the policies were

available in the law library.  Further, Respondent points out that due process was satisfied because Petitioner was always aware that the use of intoxicants in prison is prohibited conduct, and he only argues that there was not adequate notice of the increased penalties he could face for engaging in prohibited conduct.  *See Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996) ("[i]t is clearly established, both by common sense and by precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed.").  As such, the Court finds that the record demonstrates that proper procedure was followed to inform inmates of program statements and amendments to BOP policies on Inmate Discipline.

In conclusion, there is no evidence that the Breathalyzer test was administered improperly, that Petitioner sought and was denied his right to call witnesses, or that Petitioner was not properly informed about BOP policies.  Accordingly, the Court finds that the due process requirements as delineated by *Wolff* were met in this case.  Additionally, in light of Petitioner's Breathalyzer results, the Court finds that the DHO findings were supported by "some evidence" as required by *Hill*, *supra*.  Therefore, the Petitioner's Petition shall be denied.

**IV.   RECOMMENDATION**

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1)   DENYING Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1);

(2)   DENYING AS MOOT Petitioner's Motion for Extension of Time to File Reply;

(3)   DENYING AS MOOT Petitioner's Motion for Judgment on the Pleadings, Summary Judgment and Judicial Notice;

(4)   DECLINING to issue a certificate of appealability.  Reasonable jurists would not find the Court's ruling debatable.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CV-12-689-TUC-CKJ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

DATED this 10th day of September, 2013.

_____
Bruce G. Macdonald
United States Magistrate Judge