WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Don Diago Francisco Glover, | No. CV-12-00689-TUC-CKJ (BGM) |
| Petitioner, | **ORDER** |
| v. | |
| Susan G. McClintock | |
| Respondent. | |

On September 11, 2013, Magistrate Judge Bruce G. McDonald issued a Report and Recommendation, (Doc. 19), in which he recommended denying Petitioner's Petition Under 28 U.S.C. §2241 for a Writ of Habeas Corpus by a Person in Federal Custody. Magistrate Judge McDonald further recommended that the district court deny as moot Petitioner's Motion for Judgment on the Pleadings, Summary Judgment, and Judicial Notice, (Doc. 14), and his Motion for Extension of Time to File Reply.  (Doc. 17).

Magistrate Judge McDonald advised the parties that written objections to the Report and Recommendation were to be filed within fourteen days of service of a copy of the Report and Recommendation pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure.  On November 21, 2013, Petitioner filed Objections to the Magistrates Report and Recommendation.[1]  (Doc. 22).  Respondents filed a Response on December 9, 2013.  (Doc. 23).

---

[1] On October 24, 2013, the Court granted Petitioner an extension of time to file Objections to the Report and Recommendation to November 15, 2013.  While Petitioner's Objections were untimely, the Court will consider them.

## I. Background

Petitioner is currently serving a 151 month sentence for Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §846.  (Doc. 8-1 at p. 2).  Beginning on December 2, 2009 through March 7, 2012, Petitioner was incarcerated at the Federal Medical Center ("FMC Rochester") in Rochester, Minnesota.  *Id*.  He was then transferred to Federal Correctional Institution ("FCI Safford") in Safford, Arizona, where he is currently incarcerated.  *Id*.

On December 9, 2011, Senior Officer Heather Ptacek administered three Breathalyzer tests on Petitioner with an Alco-Sensor 3 Breathalyzer.  (Doc. 8-1 at p. 21).  Petitioner registered a .080 reading on his first test at 9:33 p.m., a .082 reading on a second test at 9:35 p.m., and a .103 reading on his third test at 9:48 p.m.  *Id*.

Officer Ptacek wrote an incident report detailing the results of the Breathalyzer tests and charging Petitioner with a violation of Code 112, Use of any Narcotics, Marijuana, drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the Medical Staff. (Doc. 8-1 at p. 17).  On December 10, 2011, Lieutenant R. Stennes delivered a copy of the incident report to Petitioner and advised him of his rights.   (Doc. 8-1 at p. 18).

On December 14, 2011, Petitioner signed a form acknowledging that he had been advised of his rights and indicated that he did not wish to have a staff representative or witnesses at his Discipline Hearing Officer ("DHO") proceeding. (Doc. 8-1 at p. 19).  On January 10, 2012, at the DHO proceeding, Petitioner reiterated that he did not want a staff representative and did not want to present any witnesses at the hearing.  (Doc. 8-1 at p. 20).

During the hearing, Petitioner claimed that the Breathalyzer machine malfunctioned and that procedures were not properly followed with regards to the time intervals between tests.  (Doc. 8-1 at p. 12).  After examining the evidence, DHO Auterson found Petitioner guilty.  *Id*.  Petitioner was sanctioned 41 days of Good Time

Credits, 60 days loss of Commissary, Telephone, and Visiting privileges and he received 30 days of Disciplinary Segregation. *Id.*

On May 16, 2012, DHO Auterson signed the DHO report. Two days later a copy of the report was provided to Petitioner. (Doc. 8-1 at p. 14-16). On June 12, 2012, Petitioner filed his administrative remedy appeal with the Western Regional Office. *See* (Doc. 13 at p. 12). A response was due to him by July 12, 2012. *Id*. Having failed to receive a response in the allotted time period, Petitioner proceeded to appeal to the Central Office on July 28, 2012. (Doc. 13 at p. 15). On September 20, 2012, Petitioner filed a Petition for Writ of Habeas Corpus because he had failed to receive a response in the allotted time period. (Doc. 1).

*II.  Standard of Review*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Pursuant to 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *See also Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir.2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made).

*III.  Analysis*

Magistrate Judge McDonald's Report and Recommendation found that the Court has jurisdiction over this matter and that the Petitioner exhausted his administrative remedies prior to filing his Habeas Petition. The Court agrees. Further, Respondent has

not objected to Magistrate Judge McDonald's finding that Petitioner exhausted his administrative remedies prior to filing his Petition. As such, the Court adopts Magistrate Judge McDonald's findings regarding jurisdiction and Petitioner's exhaustion of administrative remedies.

In his Petition, Petitioner asserts that his due process rights were violated because (1) the Bureau of Prisons ("BOP") staff performed the Breathalyzer test improperly, (2) he was not allowed to present witnesses and evidence, and (3) he was not properly informed of program statements and amendments to BOP policies on Inmate Discipline. (Doc. 1). As a result of his infraction, he lost 41 days of good time credit.

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. As such, they have a due process interest in the disciplinary process that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-67, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied* 487 U.S. 1207 (1988) (*citing Wolff*, 418 U.S. at 563-66, 94 S.Ct. at 2978-79). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

The record reflects that Petitioner received written notice of the charges against him including the evidence relied upon and the basis for disciplinary action when he was provided with a copy of the incident report by Lieutenant R. Stennes on December 10, 2011. Moreover on December 14, 2011 and January 10, 2012, Petitioner acknowledged that he was advised of his right to call witnesses and present documentary evidence at the DHO proceeding. As such, Petitioner's due process rights at the disciplinary proceeding

were not violated.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id*. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*. Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703 (9th Cir. 1987) (*citing Hill*, 472 U.S. at 454-56) (*emphasis* added in *Cato*).

*DHO Hearing*

Petitioner does not object to Magistrate Judge McDonald's finding that Petitioner was not denied due process because he was precluded from presenting witnesses. Moreover, the record demonstrates that Petitioner was notified of his right to call witnesses and present evidence at the DHO proceeding and waived that right. As such, the Court finds that Petitioner was not denied due process and was not precluded from presenting witnesses at the DHO proceeding.

*Breathalyzer Test*

In his Petition, Petitioner argues that the Breathalyzer was not operating properly when he was tested and that the BOP staff improperly administered his Breathalyzer test. Magistrate Judge McDonald found that the procedures were properly complied with and there was no indication that the Breathalyzer was not operating properly at the time Petitioner was tested. In his Objection, Petitioner argues that the times noted for his Breathalyzer tests in the incident reports and Breathalyzer logs were inserted at random

to cover up the officer's errors in failing to follow proper testing procedures.

According to the Breathalyzer log, on December 9, 2011, Petitioner was given a Breathalyzer test at 9:33 p.m. and registered a reading of .080. (Doc. 8-1 at p. 21). Then, at 9:35 p.m., he was given a second test, which registered a reading of .082. *Id*. Finally, at 9:48 p.m., Petitioner took a third Breathalyzer test, which registered a reading of .103. *Id*. According to the Breathalyzer testing procedures found in Program Statement 6590.07, after an initial test registers a positive reading of .02 or higher, a second confirmation test shall be administered 15 minutes after the initial test. (Doc. 13 at p. 6). Petitioner argues that since his first two tests were performed within two minutes of each other, proper procedures were not followed.

However, as noted by Magistrate Judge McDonald, the testing procedures only require that the inmate be tested 15 minutes after an initial positive test. There is nothing in the procedures that prohibits the administration of additional tests beyond the two noted in the procedures. As such, despite the fact that Petitioner received a second test two minutes after his initial positive test, the procedures were properly complied with because he then received a third test 15 minutes after his initial test. The times and readings of the two tests that were administered 15 minutes apart are properly reflected in the incident report and the Breathalyzer log.[2]

Petitioner also argues that the Breathalyzer device malfunctioned. However, as noted by Lieutenant Underwood in the incident report, while Breathalyzer devices had previously malfunctioned, those devices were replaced months prior to Petitioner's December 9, 2011 Breathalyzer tests. The Court finds that there is no evidence in the record to suggest that the Breathalyzer device malfunctioned when Petitioner took the tests in December 2011.

Finally, Petitioner alleges that he was not present when two other inmates, Marco

---

[2] Petitioner appears to argue that since the incident report does not reference the second Breathalyzer test he took at 9:35 p.m., the BOP failed to adhere to proper procedures and the times were fabricated. However, the incident report references the Breathalyzer test performed at 9:33 p.m. and 9:48 p.m., which is consistent with the Breathalyzer log and the Breathalyzer testing procedures.

- 6 -

Romero and Surinder Dhaliwal received Breathalyzer tests on December 9, 2011. The incident reports from those two other inmates indicate that they were tested a short time before and after Petitioner. Petitioner argues that this supports his suggestion that the procedures were not followed. However, this argument is unavailing. The incident reports for inmates Marco Romero and Surinder Dhaliwal show that these two inmates were tested at different times than Petitioner and there is no indication from the report that the inmates were together at the time they were tested. *See* (Doc. 22 at p. 7-9). As such, based on the record, there is sufficient evidence to support the findings of the disciplinary board in this case. *See Cato v. Rushen*, 824 F.2d 703 (9th Cir. 1987).

*Policy Changes*

In his Petition, Petitioner argues that he was not properly informed about program statements and amendments to BOP policies on Inmate Discipline. In his Objection, Petitioner asserts that the inmate population was never informed about the new enactments of policy related to Program Statement 5270.09. In opposition, Respondents provided a signed declaration from Mary Haugen, which states that prior to the effective date of the new policy on August 1, 2011, a notice was placed on the inmate bulletin boards in all of the housing units at FMC Rochester, advising inmates of the upcoming change to the inmate discipline policy. (Doc. 8-1 at p. 36). Additionally copies of the new policy were available through the electronic law library. *Id*.

In his Objection, Petitioner does not allege that the notice referenced by Ms. Haugen was never posted.[3] He argues that since the notice was not signed, it is invalid pursuant to the Administrative Procedure Act. However, there is nothing in the Administrative Procedure Act, which mandates that an internal prison notice of a change in policy be in the form of a signed memorandum. As such, the Court finds that Petitioner received sufficient notice of the change in policy.

---

[3] Petitioner has not alleged in his Objections or provided any evidence to rebut Respondent's assertion that the notice was posted and that the policies were available in the law library.

Further, even if Petitioner did not receive sufficient notice of the change in policy, Petitioner was not denied due process. The policy change at issue addressed an increase in potential sanctions for previously prohibited conduct and not a substantive change in prohibited conduct. Due process requires that an individual be provided with fair notice of prohibited conduct before a sanction can be imposed. *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996). Petitioner does not assert that he was unaware that drinking intoxicants in prison was prohibited. Moreover, Petitioner was sanctioned with 30 days of disciplinary segregation time, which fell within the range of sanctions as contemplated by the prior policy. As such, the change in sanctions in the policy statement had no effect on Petitioner.

After an independent review of the record, the Court finds that the due process requirements were met in this case. *See Wolff v. McDonnell*, 418 U.S. 539, 556-67, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Further, there is no evidence that the Breathalyzer malfunctioned or that the test was improperly administered or that Petitioner was not sufficiently notified about a change in the BOP policy. Petitioner's Petition is denied.

*Motion for Summary Judgment*

On May 13, 2013 Petitioner filed a Motion for Judgment on the Pleadings, Motion for Summary Judgment Motion for Judicial Notice and Glover's Affidavit in Support thereof. (Doc. 14). In light of the Court's ruling addressing Petitioner's Petition, his Motion is denied as moot.

*Motion for Extension of Time to File Reply*

Petitioner filed his Motion for an extension of time to file a reply in support of his Petition on July 2, 2013. (Doc. 17). Then, on July 22, 2013, Petitioner filed a Reply affirmation. (Doc. 18). The Report and Recommendation acknowledges that Magistrate Judge McDonald received and considered Petitioner's Reply in his analysis. As such,

since Petitioner filed a Reply and it was considered by Magistrate Judge McDonald in his Report and Recommendation, Petitioner's Motion for Extension of Time to File Reply is denied as moot.

*Certificate of Appealability*

"The plain language of [28 U.S.C.] §2253(c)(1) does not require a petitioner to obtain a [certificate of appealability] in order to appeal the denial of a §2241 petition." *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008).  "Nor is there any other statutory basis for imposing a [certificate of appealability] requirement on legitimate §2241 petitions.  Although state prisoners proceeding under §2241 must obtain a [certificate of appealability], *see* §2253(c)(1)(A), there is no parallel requirement for federal prisoners." *Id*.  Accordingly, because Petitioner is a federal prisoner bringing a legitimate §2241 petition, a certificate of appealability is not required.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation, (Doc. 19), is ADOPTED.

2. Petitioner's Petition Under 28 U.S.C. §2241 for a Writ of Habeas Corpus by a Person in Federal Custody, (Doc. 1), is DENIED.

3. Petitioner's Motion for Judgment on the Pleadings, Motion for Summary Judgment Motion for Judicial Notice and Glover's Affidavit in Support thereof, (Doc. 14), is DENIED AS MOOT.

4. Petitioner's Motion for Extension of Time to File Reply, (Doc. 17), is DENIED as MOOT.

5. The Clerk of the Court shall enter judgment in this matter and close its file.

Dated this 10th day of January, 2014.

_____
Cindy K. Jorgenson
United States District Judge